IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KRISTA MEYER, K.J. (*a minor at all relevant times*) by Krista Meyer as Guardian, K.A. (*a minor at all relevant times*) by Krista Meyer as Guardian, K.B. (*a minor at all relevant times*) by Krista Meyer as Guardian, K.B.2 (*a minor at all relevant times*) by Krista Meyer as Guardian, KAYTONNA RUFFIN-HANDY, I.Y. (*a minor at all relevant times*) by Kaytonna Ruffin-Handy as Guardian, and KYDREECE BURKS,<br><br>        Plaintiffs,<br><br>  v.<br><br>OFFICER TYSON HAVENS, 1-5 JOHN/JANE DOE WILLIAMSPORT POLICE OFFICERS, and JOHN/JANE DOES #1-20 FBI AGENTS/FEDERAL MARSHALS,<br><br>        Defendants. | No. 4:22-CV-01247<br><br>(Chief Judge Brann) |

**MEMORANDUM OPINION**

JULY 26, 2023

I.     **BACKGROUND AND PROCEDURAL HISTORY**

This suit 7is brought by Plaintiff Krista Meyer (on behalf of herself and minor Plaintiffs K.J., K.A., K.B., and K.B.2), Plaintiff Kaytonna Ruffin-Handy (on behalf of herself and minor Plaintiff I.Y.), and Plaintiff Kydreece Burks against the City of

Williamsport, Pennsylvania police officer Tyson Havens and other unnamed officers, unnamed Federal Bureau of Investigations officers, and United States Marshals.[1]

Plaintiffs filed their original Complaint on August 9, 2022, which Havens moved to dismiss.[2] Plaintiffs then filed the Amended Complaint on August 26, 2022, which rendered Havens' first motion to dismiss moot.[3] Havens moved to dismiss the Amended Complaint on November 8, 2022, and that motion was fully briefed.[4]

On April 29, 2023, the Court converted Havens' motion to dismiss to a motion for summary judgment.[5] The parties were then given sufficient time to conduct limited discovery and file any supplemental briefing.[6] Havens filed: (1) a statement of material facts on May 3, 2023; and (2) a supplemental brief in support of his motion for summary judgment on June 26, 2023.[7] Plaintiffs did not file their own statement of material facts, or oppose any of the material facts set forth by Havens in his May 3, 2023 filing. Therefore, under M.D. Pa. L.R. 56.1, Havens' stated material facts are "deemed to be admitted."[8]

---

[1] Doc. 10.
[2] Docs. 1, 7.
[3] Docs. 10, 11 (denying October 17, 2022 motion to dismiss as moot).
[4] Docs. 12, 14, 15.
[5] Doc. 16.
[6] *See* Docs. 16, 17, 18, 20, 26.
[7] Docs. 17, 26.
[8] However, the Court need not, and will not, restate these facts, as the Court's analysis will decide Plaintiffs' claims as a matter of law based on one material fact—the search at issue was conducted pursuant to a valid search warrant. Neither party disputes this fact, and that fact would have still guided the Court's analysis even if Havens had not filed a statement of facts. The Court notes that Plaintiffs did file a declaration of Plaintiff Meyer on May 5, 2023 (Doc.

2

Plaintiffs' action is against Defendant Havens, 1-5 John/Jane Doe Williamsport Police Officers, and 1-20 John/Jane Doe federal agents.[9] Plaintiffs have only served Defendant Havens, and the timeline for serving the remaining defendants expired long ago.[10] Therefore, all claims against those defendants are dismissed without prejudice. The Court will proceed in deciding the claims against Defendant Havens as a matter of law.

## II.   LAW

The legal standard for summary judgment is well established. "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose."[11] Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[12] "Facts that could alter the outcome are 'material facts,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the

---

18) and the full transcript of a deposition of Plaintiff Meyer (Doc. 24) on June 23, 2023. However, Plaintiffs did not cite to any evidence from these documents to support any statement of material facts, or to admit or deny any of the material facts set forth by Havens. Plaintiffs had ample time to do so; indeed, Havens filed his statement of material facts on May 3, 2023. Perhaps Plaintiffs intended to admit to the facts set forth by Havens. In any event, Havens' facts are deemed admitted and therefore the Court's ruling here will be even more straightforward than originally anticipated.

[9]   Doc. 17.
[10]  Fed. R. Civ. P. 4(m).
[11]  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).
[12]  Fed. R. Civ. P. 56(a).

burden of proof on the disputed issue is correct."[13] "A defendant meets this standard when there is an absence of evidence that rationally supports the plaintiff's case."[14] "A plaintiff, on the other hand, must point to admissible evidence that would be sufficient to show all elements of a prima facie case under applicable substantive law."[15]

"The inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits."[16] Thus, "if the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented."[17] "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."[18] "The judge's inquiry, therefore, unavoidably asks . . . 'whether there is

---

[13] *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) and *Celotex*, 477 U.S. at 322).
[14] *Clark*, 9 F.3d at 326.
[15] *Id.*
[16] *Liberty Lobby, Inc.*, 477 U.S. at 252.
[17] *Id.*
[18] *Id.*

[evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'"[19]

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."[20] "Regardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."[21]

Where the movant properly supports his motion, the nonmoving party, to avoid summary judgment, must answer by setting forth "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[22] For movants and nonmovants alike, the assertion "that a fact cannot be or is genuinely disputed" must be supported by: (i) citing to particular parts of materials in the record that go beyond mere allegations; (ii) showing that the materials cited do not establish the absence or presence of a

---

[19] *Id.* (*quoting Improvement Co. v. Munson*, 81 U.S. 442, 447 (1871)).
[20] *Celotex*, 477 U.S. at 323 (internal quotations omitted).
[21] *Id.*
[22] *Liberty Lobby, Inc.*, 477 U.S. at 250.

genuine dispute; or (iii) showing that an adverse party cannot produce admissible evidence to support the fact.[23]

"When opposing summary judgment, the non-movant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'"[24] Moreover, "if a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."[25] On a motion for summary judgment, "the court need consider only the cited materials, but it may consider other materials in the record."[26]

Finally, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."[27] "There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[28] "If the evidence is merely colorable . . . or is not significantly probative, summary judgment may be granted."[29]

---

[23] Fed. R. Civ. P. 56(c)(1).
[24] *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2002).
[25] Fed. R. Civ. P. 56(e)(2).
[26] *Id*. at (c)(3).
[27] *Liberty Lobby, Inc.*, 477 U.S. at 249.
[28] *Id*.
[29] *Id*. at 249-50 (internal citations omitted).

## III.   ANALYSIS

Plaintiffs' Amended Complaint asserts three causes of action under 42 U.S.C. § 1983, alleging violations of Plaintiffs' rights under the Fourth Amendment of the United States Constitution: (1) unreasonable search and seizure of Plaintiffs' person; (2) unreasonable search and seizure of Plaintiffs' property; (3) use of excessive force.[30]

### A.   The Warrant and Subsequent Search

On August 18, 2020, United States Magistrate Judge William I. Arbuckle executed a search warrant (the "Warrant") regarding Plaintiffs' residence at 945 Memorial Avenue, Williamsport, Pennsylvania, 17701 (the "Residence").[31] Federal law enforcement officers conducted a search of the Residence, pursuant to the Warrant, on August 19, 2020.[32] Detective Havens was present during the execution of the Warrant for approximately five minutes.[33]

### B.   Count I: Search and Seizure of Persons

Plaintiffs allege that Havens violated their Fourth Amendment right to be free from unreasonable searches and seizures when he: (1) entered the house without knocking; and (2) unlawfully arrested and detained women and their children in a verbally threatening manner and at gunpoint without any legal justification.[34]

---

[30]   Doc. 10.
[31]   Doc. 17 ¶ 1, Ex. A (copy of the Warrant).
[32]   Doc. 10 ¶ 14.
[33]   Doc. 17 ¶¶ 18, 25, Ex. B (Havens Dec.) ¶¶ 10, 17.
[34]   Doc. 10 ¶¶ 39-47; Doc. 24, Ex. A (Meyer Dep. Tr.).

Havens admits that he was present for five minutes during the search of the Residence, but that he arrived after federal law enforcement agents "had already entered the house, secured the occupants, and the search was well underway."[35] According to the admitted statement of facts, "Havens did not yell at any occupant of the house" and "did not detain plaintiffs or any other occupants of the residence."[36]

For the Court's purposes, the parties do not dispute one crucial material fact, and that is that the search of the Residence, and any subsequent seizure of Plaintiffs' property, were conducted pursuant to the Warrant. The Amended Complaint omitted this fact, and Plaintiffs have failed to dispute the Warrant's existence or legitimacy in responding to Havens' motion to dismiss, statement of material facts, or supplemental brief in support of the motion for summary judgment.[37]

It is well established that "[w]here the alleged Fourth Amendment violation[s] involve[ ] a search and seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner."[38] Further, "[i]t is settled that except in certain carefully defined classes of cases, a search of private property without proper consent is unreasonable

---

[35] Doc. 17 ¶¶ 18-20, Ex. B (Havens Dec.) ¶¶ 12, 18.
[36] *Id.* ¶ 28, Ex. B (Havens Dec.) ¶ 20.
[37] *See* Docs. 10, 15.
[38] *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012).

unless it has been authorized by a valid search warrant, because a search warrant provides the detached scrutiny of a neutral magistrate."[39]

Courts are directed to give "great deference" to a magistrate's determination of probable cause.[40] However, that deference is "not boundless" – first, that deference does not preclude inquiry into the "knowing or reckless falsity of the affidavit on which the determination [of probable cause] was based," and second, "the courts must also insist that the magistrate purport to 'perform his neutral and detached function and not serve merely as a rubber stamp for the police.'"[41]

The parties have not presented any evidence to indicate that the Warrant was based on a knowingly or recklessly false affidavit, or that Magistrate Judge Arbuckle failed to serve in a neutral and detached function in issuing the Warrant. Therefore, the Court gives deference to Magistrate Judge Arbuckle's determination that probable cause supported the Warrant and finds that the Warrant was legitimately issued and executed. Havens' presence at the Residence during the search was therefore permissible because he was acting pursuant to the Warrant and in support of the federal law enforcement agents.[42] This undisputed fact demonstrates that the searches and seizures were valid and that Havens acted in a reasonable manner as a matter of law. Therefore, Plaintiffs' first claim fails.

---

[39] *Miller v. Ctr. Cnty.*, No. 4:15-CV-1754, 2016 U.S. Dist. LEXIS 117805, at *16 (M.D. Pa. Sept. 1, 2016) (internal citations and quotations omitted) (emphasis added).
[40] *Id*.
[41] *Id*. at *16-17.
[42] Doc. 17 ¶ 18, Ex. B (Havens Dec.) ¶ 10.

### C.     Count II: Search and Seizure of Property

Plaintiffs similarly allege that Havens violated their Fourth Amendment rights when he damaged and "ransacked" the Residence, and "took items and have not since returned them[,] without justification."[43] However, according to the admitted statement of facts, "any personal property seized during [the] search (if any) would have been done by the FBI," and "Havens never seized any property of [P]laintiffs during the search on August 19, 2020, and never had any such property of plaintiffs in his possession at any time."[44] As these facts have been deemed admitted by Plaintiffs, they are not in dispute.

Plaintiffs' claim fails as a matter of law on two fronts. First, the evidence presented does not indicate that Havens had any personal involvement in seizing Plaintiffs' property. Plaintiffs bring their claims under Section 1983 and therefore must "demonstrate a defendant's personal involvement in the alleged wrongs"[45] and "make[ ] sufficient allegations of a defendant's personal involvement by describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct."[46]

The alleged seizure was conducted pursuant to a federal warrant; Havens is a county law enforcement officer who arrived after the scene was secured, and who

---

[43]  Doc. 10 ¶¶ 48-57.
[44]  Doc. 17 ¶¶ 30-32, Ex. B. (Havens Dec.) ¶¶ 23-24.
[45]  *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (internal quotations omitted).
[46]  *Id*.

was present only to assess the situation for a few minutes. As the undisputed facts indicate that he did not damage or seize Plaintiffs' property, this claim fails because Havens did not have personal involvement in any of Plaintiffs' alleged constitutional violations relating to the seizure of property.

Second, even if Havens had been present for a more substantial portion of the search and seizure, officers who merely participate in the execution of a search warrant are immune from Section 1983 liability.[47] And as the Court has established, the existence of a warrant is sufficient to demonstrate that law enforcement officers on the scene acted in good faith when executing that warrant.[48] Thus, this claim fails as a matter of law because the parties do not dispute that Havens was—at most—a mere participant in the execution of a valid search warrant. Therefore, he is immune from Section 1983 liability and Plaintiffs' second claim fails as a matter of law.

### D.   Count III: Excessive Force

Finally, Plaintiffs allege that Defendants used excessive force by "hold[ing] women and children (as young as one year of age) at gunpoint, point[ing] guns at all Plaintiffs, and "threat[ening] Plaintiffs verbally at gunpoint."[49] According to the

---

[47] *See Showers v. Spangler*, 182 F.3d 165, 174 (3d Cir. 1999) (officers acting under a lead officer's direct operational control, who merely participated in search, without more, are not liable); *Leosine v. County of Lackawanna*, 77 F. App'x 74, 80 (3d. Cir. 2003) (officers who took part in execution of search warrant were entitled to qualified immunity because they did not draft the warrant and relied on local procedures); *Giacalone v. Ne. Pa. Ins. Fraud Task Force*, No. 3:11-cv-01647, 2012 U.S. Dist. LEXIS 103122, at *15-16 (M.D. Pa. July 24, 2012).

[48] *See United States v. Leon*, 468 U.S. 897, 922 (1984) (internal citations omitted).

[49] Doc. 10 ¶ 59.

admitted statement of facts, Havens neither engaged in this conduct nor witnessed it by any other law enforcement officers.[50]

"An excessive force claim under Section 1983 arising out of law enforcement conduct is based on the Fourth Amendment's protection from unreasonable searches and seizures."[51] In such a claim, "the 'pivotal inquiry' is whether 'force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'"[52] It is established that allegations of law enforcement officers pointing guns alone are insufficient to state an excessive force claim under the Fourth Amendment.[53] By way of example, in *Speaks v. City of Philadelphia*, the plaintiffs were two adults and two minor children who alleged that law enforcement officers broke down plaintiffs' door without knocking and pointed guns at all plaintiffs, including one plaintiff who was naked.[54] The United States District Court for the Eastern District of Pennsylvania—found that the *Speaks* plaintiffs failed to allege specific facts that the "officers subjected plaintiffs to any physical force" such as handcuffing, other physical restraints, of any physical contact whatsoever.[55]

---

[50] Doc. 17 ¶¶ 28-29; Ex. B (Havens Dec.) ¶¶ 20-21.
[51] *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995).
[52] *Burk v. Wakefield*, No. 4:21-cv-01354, 2022 U.S. Dist. LEXIS 97993, at *11 (M.D. Pa. June 1, 2022) (quoting *Ricks v. Shover*, 891 F.3d 468, 480 (3d Cir. 2018) (quoting *Smith v. Mensinger*, 293 F.3d 641, 649 (3d Cir. 2002))).
[53] *Speaks v. City of Phila.*, No. 96-CV-03428, 1996 U.S. Dist. LEXIS 19071, at *15-16 (Dec. 17, 1996).
[54] *Id*. at *7-8.
[55] *Id*. at *15-16.

Here, the admitted facts demonstrate circumstances less shocking than those alleged in *Speaks*.[56] They state that while Havens was present: (1) Plaintiffs were in the living room with no handcuffs or other physical restraints; (2) Havens did not yell at any occupants of the Residence; and (3) Havens did not detain Plaintiffs by gunpoint or any other means.[57] These facts do not rise to the level required for the Court to find that Havens exercised excessive force in violation of the Fourth Amendment. Accordingly, Plaintiffs' excessive force claim fails as a matter of law.

## IV.  CONCLUSION

The Court grants summary judgment in favor of Havens. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[56] Doc. 17 ¶¶ 27-29, Ex. B (Havens Dec.) ¶¶ 19-21.
[57] *Id*.